**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **D.V., M.V., and L.V.**

**No. 21-0030** (Monroe County 19-JA-34, 19-JA-35, and 20-JA-3)

## MEMORANDUM DECISION

Petitioner Mother S.V., by counsel Christopher D. Lefler, appeals the Circuit Court of Monroe County's December 15, 2020, order terminating her parental rights to D.V., M.V., and L.V.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Amy L. Mann, filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for an improvement period and terminating her parental rights when petitioner was actively participating in long-term inpatient drug treatment at the time of the final dispositional hearing.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2019, then-seventeen-year-old H.C.[2] was involved in a truancy proceeding, during which her cell phone was confiscated pursuant to a police investigation involving an improper relationship with the stepfather. The phone's messages also revealed concerning text messages between H.C. and petitioner, and the truancy officer turned over the messages to Child Protective Services ("CPS"). The messages showed that petitioner had threatened H.C.; requested H.C. to obtain illicit drugs; and offered H.C. marijuana if she complied

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]H.C. is not at issue on appeal because she reached the age of majority during the proceedings below.

with her requests for food, money, medications, and diapers for then two-year-old M.V. and then-one-year-old L.V. The DHHR also alleged that petitioner had an open Child Protective Services case as recently as February of 2018 to October of 2018 due to her substance abuse issues and that the DHHR provided petitioner with random drug screening, counseling, and parenting classes as a part of that case. The DHHR filed the underlying child abuse and neglect petition in December of 2019, based upon petitioner's continued drug use despite the DHHR's efforts in 2018, her inability to provide for the basic needs of the children, and her exploitation of H.C. to obtain illicit drugs. The DHHR further alleged that petitioner's parental rights to an older child were previously involuntarily terminated in Arizona due to pervasive drug abuse. In February of 2020, the DHHR filed an amended petition after petitioner gave birth to drug-exposed D.V. and abruptly left him at the hospital. The DHHR alleged that petitioner failed to obtain any prenatal care for D.V, that D.V. was born premature, and that the child was transferred to another hospital due to his poor health condition.

The circuit court held an adjudicatory hearing in August of 2020 wherein petitioner stipulated to the allegations of abuse and neglect as contained in the amended petition. The circuit court accepted the stipulations and adjudicated petitioner as an abusing parent. Petitioner then moved for a post-adjudicatory improvement period, which the DHHR opposed, citing petitioner's prior involuntary termination of her parental rights to another child. The circuit court denied petitioner's motion for a post-adjudicatory improvement period.

In October and November of 2020, the circuit court held dispositional hearings. Petitioner again moved for a post-adjudicatory improvement period. During the October hearing, petitioner's counsel proffered that petitioner was enrolled in a drug detoxification program. The DHHR presented the testimony of a CPS worker who stated that she had received numerous referrals related to petitioner's drug abuse since 2017 but had been unable to substantiate the allegations because drug tests used by the DHHR at that time could not distinguish between prescribed amphetamine, such as Adderall, and illicit methamphetamine. Thus, when petitioner tested positive for amphetamine, it was not clear that the positive result showed that petitioner used illicit drugs. She explained that the revelations in H.C.'s text messages substantiated those allegations. Through her testimony, the DHHR admitted the text messages as exhibits. The worker testified that when she filed the petition, she spoke to petitioner who admitted to relapsing and agreed to enter drug rehabilitation. The worker stated that petitioner had been "on and off" of medication-assisted treatment (Suboxone) the "whole entire time," referring to the CPS interventions dating back to 2017, but that petitioner continued to abuse drugs. The DHHR then moved into evidence a copy of an order from Arizona showing that petitioner's parental rights to a prior child had been previously involuntarily terminated. The worker then stated that due to the aggravated circumstances of petitioner's prior termination, the DHHR was relieved of its duty to provide reasonable efforts to reunify the family.

At the hearing in November of 2020, another CPS worker testified that she worked a case with petitioner in 2018 after substantiating allegations of abuse and neglect. The worker stated that the DHHR provided petitioner with parenting supervision services and random drug screening for approximately nine months in 2018, and the case was ultimately closed. However, a year later, the DHHR received another referral resulting in the underlying proceedings. Regarding the case at bar, the worker stated that she gave petitioner a comprehensive list of drug rehabilitation and

detoxification programs and facilities in February of 2020, but petitioner refused to enter a program until a couple of weeks before the dispositional hearing in October of 2020. The worker stated that petitioner had been enrolled into a Suboxone clinic and provided a letter showing that petitioner had attended occasional counseling through the clinic. On cross-examination, the worker testified that petitioner had completed the first phase of long-term inpatient drug treatment at a DHHR-approved facility.

Next, the executive director for Community Corrections responsible for drug testing respondent parents in these proceedings testified regarding petitioner's drug testing from February to August of 2020. She stated that petitioner was largely compliant until June of 2020, when she obtained employment in Virginia. The director explained that she offered to work with petitioner by driving to meet her, but that petitioner ultimately failed to contact the director to make arrangements for these meetings. Petitioner also failed to respond to phone messages from the director's office. The officer was only able to obtain one drug screen from petitioner in early August of 2020, which was the last drug screen that petitioner submitted.

Petitioner presented the testimony of a case manager at the inpatient drug treatment program. The case manager stated that petitioner entered the program on October 14, 2020, after completing two weeks of drug detoxification, had completed the first phase of her treatment plan, and deserved an improvement period. On cross-examination, she explained that petitioner would not have been accepted into the drug detoxification program unless she had been actively using drugs. Petitioner testified that she had been taking Suboxone since 2014 and tapered off of it in order to enter the drug detoxification program on October 3, 2020. When asked if she had anything else she wanted to say to the court, petitioner stated the following:

> Just that, you know, in the last ten years, the only—I've not been in a rehab program, per se, but I have been in the Suboxone treatment program. I find that being here at Waves [long-term inpatient drug treatment] has really changed and brought things to light and out of me to where I've been able to find myself to where—the Suboxone program did not allow me to do that because it was still a substance.

Upon questioning by the court, petitioner stated that she had five children. She admitted that not only had her parental rights been previously terminated to the oldest child, but that the maternal grandmother had guardianship of H.C. for the majority of her life. Further, she testified that two of her youngest children were born with Suboxone in their systems. Petitioner stated that despite these facts, she had not entered a long-term inpatient drug rehabilitation program until October of 2020. Petitioner also stated that she received services from the DHHR in her 2018 case, but that she relapsed in drug abuse shortly after that case was closed. When asked why she waited so long to enter into a long-term inpatient drug rehabilitation program, petitioner answered that she was taking Suboxone and was afraid of experiencing withdrawal symptoms by entering drug rehabilitation.

The circuit court noted that petitioner had not entered long-term inpatient drug treatment until she was "under the gun, so to speak, because of the pendency of the dispositional hearing." The circuit court concluded that petitioner's ten-year history of addiction was not going to be cured

in the near future and that the children deserved permanency. The circuit court denied petitioner's renewed motion for an improvement period and found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the children's welfare. Accordingly, the circuit court denied petitioner's motion for an improvement period and terminated her parental rights by its December 15, 2020, order.[3]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period. Specifically, petitioner contends that the circuit court failed to recognize petitioner's participation in a Suboxone treatment program, her active drug screening, and continued visitation as evidence of her likelihood of successfully completing of an improvement period. Petitioner points to a DHHR worker's testimony at the October of 2020 hearing that she was aware that petitioner was participating in a Suboxone program at the time of the filing of the petition and that petitioner continued to use prescribed Suboxone and attend some counseling through the Suboxone clinic during the proceedings. Petitioner argues that Suboxone is a DHHR approved form of medication assisted drug treatment. Furthermore, petitioner cites another DHHR worker's testimony that the DHHR did not provide services other than supervised visitations and random drug screening during the proceedings below. Upon our review of the record, we find petitioner is entitled to no relief.

West Virginia Code §§ 49-4-610(2)(B) provides that a circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that [she] is likely to fully participate in the improvement period." It is well established that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). Most importantly, this Court has held that "[t]he circuit court has the discretion to refuse to grant an

---

[3]The father's parental rights were terminated below, and the permanency plan for the children is adoption by their relative foster family.

improvement period when no improvement is likely." *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

At the outset, we dispose of petitioner's complaints of the lack of the DHHR's services. Petitioner ignores the fact that the DHHR was not required to make reasonable efforts to preserve the family unit based upon her prior involuntary termination of parental rights, which constituted aggravated circumstances pursuant to West Virginia Code § 49-4-604(c)(7)(C). Regardless, the evidence shows that petitioner not only received random drug screening in an effort to keep her accountable for achieving and maintaining sobriety but also received supervised visitation below. Additionally, she received random drug screening, counseling, and parenting classes for approximately nine months in 2018 in another case addressing the same drug abuse issues. Accordingly, we find no merit to this argument.

Regarding petitioner's contention that the circuit court failed to consider or give proper weight to petitioner's Suboxone use within an approved program, we likewise find no merit, especially in light of the ample testimony given regarding petitioner's continued abuse of illegal drugs. The record shows that despite taking prescribed Suboxone for many years, petitioner continued to abuse illicit drugs, failed to properly care for the younger children, and exploited H.C. to obtain drugs, resulting in numerous referrals to CPS. Additionally, petitioner admitted below that she continued to abuse drugs despite her use of Suboxone assisted drug treatment over the preceding six years. Petitioner stated herself at the final dispositional hearing that Suboxone treatment had not been effective because it was "still a substance." Additionally, petitioner failed to regularly submit to drug screens (as testified to by the executive director for Community Corrections) and she refused to enroll into long-term inpatient drug treatment until October 14, 2020, despite being given a comprehensive list of drug rehabilitation and detoxification programs and facilities in February of 2020. As petitioner demonstrated a pattern of substance abuse while taking prescribed Suboxone, the circuit court found that petitioner was unlikely to fully participate in an improvement period. Therefore, we find no error in the circuit court's decision to deny her an improvement period.

Next, petitioner argues that the circuit court erred in terminating her parental rights when she was actively participating in long-term inpatient drug treatment at the time of the final dispositional hearing. Petitioner asserts that by the final dispositional hearing in November of 2020, evidence was presented that petitioner had completed a twenty-eight-day drug treatment program and had been actively participating in long-term inpatient drug treatment since October 14, 2020. Finally, petitioner asserts that because the children had not been placed in the DHHR's custody for more than fifteen months, the DHHR was not required to seek termination of her parental rights.[4] Based on petitioner's active drug treatment at the time of the dispositional hearing,

---

[4][T]he department shall file . . . a petition or otherwise seek a ruling in any pending proceeding to terminate parental rights: If a child has been in foster care for 15 of the most recent 22 months as determined by the earlier of the date of the first judicial finding that the child is subjected to abuse or neglect or the date which is 60 days after the child is removed from the home[.]

W. Va. Code § 49-4-605(a)(1).

petitioner argues that there was clearly a reasonable likelihood that she could correct the conditions of abuse and neglect in the near future.

West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

Petitioner is correct that the DHHR was not required to seek termination of her parental rights due to the children's length of placement in the DHHR's custody. Instead, the DHHR moved to terminate petitioner's parental rights based upon the fact that petitioner had a prior involuntary termination of parental rights to a child in 2010 due to substance abuse, had numerous CPS referrals since 2017 due to substance abuse, received services in 2018 due to substance abuse, and continued her substance abuse despite receiving these services and numerous interventions. As such, the record establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse or neglect either on her own or with help. Although petitioner enrolled in inpatient drug treatment the same month as the final dispositional hearing, the circuit court found that petitioner did so only because she was faced with termination of her parental rights and was "under the gun." The circuit court did not find petitioner's testimony that she would stay in inpatient drug treatment and fully address her substance abuse issues credible. On appeal, we decline to disturb the court's credibility determination with regard to this testimony. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). As petitioner failed to make lasting changes after the receipt of services in the 2018 case and some services in the instant case, as discussed above, the circuit court properly found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future.

Insomuch as petitioner argues that she should have been given more time to correct the conditions of abuse and neglect, we apply the following precept:

> "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. Here, the children were all under the age of three and deserved stability. Furthermore, petitioner lacked a bond with D.V. as evidenced by her leaving him at the hospital after his birth, resulting in his immediate placement in the DHHR's

custody. As such, it was necessary for the children's welfare that petitioner's parental rights be terminated. Accordingly, we find no error in the circuit court's conclusion that there was no reasonable likelihood that the conditions of neglect and abuse could be substantially corrected in the near future and that termination of petitioner's parental rights was necessary for the children's welfare.

For the foregoing reasons, we find no error in the decision of the circuit court, and December 15, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: June 22, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton